## AMERICAN SUMATRA TOBACCO CORP.
### *vs.*
## JOSEPH M. TONE, COMMISSIONER

Superior Court          Hartford County          File No. 60813

MEMORANDUM FILED JANUARY 2, 1940.

*Solomon Elsner*, of Hartford, for the Plaintiff.

*Nicholas F. Rago, Deputy Attorney General; Francis A.*

*Pallotti, Attorney General* and *Harry Silverstone, Assistant Attorney General,* for the Defendant.

COMLEY, J. In one sense it may be said that the curing of tobacco is "mechanical and the motive commercial." But the same may be said of all agricultural enterprise once it goes beyond mere tillage of the soil for sustenance. The transfer of the leaves from the shed to the warehouse has no significance except the economic advantage to the farmer in so handling his own produce. The sorting and packing of the leaves is incidental to the farmer's agricultural operation in the same sense that the sorting and grading of his apples is incidental to the operations of the fruit grower.

The defendant relies on what is designated as "Regulation 3", and particularly on that part which declares that services in connection with the packing, packaging, transportation or marketing of materials produced on a farm shall not constitute agricultural labor unless they are "carried on as an incident to ordinary farming operations as distinguished from manufacturing or commercial operations."

Throughout the trial of the case this regulation was referred to as an authoritative definition of the term "agricultural labor" as used in the statute.

Assuming that the power to make regulations includes the power to define the terms of the act, and applying the definition to this case, it seems clear that the labor employed by the plaintiff in preparing its annual crop of tobacco for the market is incidental to an ordinary farm operation rather than to a commercial or manufacturing operation.

The defendant distinguishes between shade-grown tobacco and the other varieties grown in Connecticut. He claims that the preparation of the shade-grown tobacco for market is not incidental to ordinary farm operations because of the comparatively elaborate and prolonged process of curing, and must be treated as a specialized activity, apart from the growing of the tobacco. And this, notwithstanding that the curing is by the farmer who grows the crop, on his own plantation or in close connection therewith, for the sole purpose of making the product of his plantation saleable, and furnishing continued employment to a considerable number of those who have labored in the fields to bring in the harvest.

The commissioner holds that his ruling is necessary in order to avoid inequality of application to labor employed by factors and similar independent agencies engaged in processing shade-grown tobacco by contract with the growers.

This effort to avoid inequality seems to me to be open to the objection that it avoids one inequality only to encounter another.

Much of the argument for the commissioner seems to hang on the proposition that the professed reason for the exclusion of agricultural labor was the assumption that farmers would not keep accurate records. The statute contains no hint that the Legislature intended to penalize the careful and business-like farmer.

Again it is argued that "it was not intended to exclude employees of any large scale enterprise." One may take judicial knowledge that farming is generally profitable in proportion to the magnitude of its scale of operation.

The commissioner calls attention to the magnitude of the shade-grown enterprise and its cumbersome conditioning machine. But no case has been cited which holds that the huge wheat growing fields of the West, with their bewildering machinery for speeding up the operations from preparing the ground for planting to preparing the crop for shipment, and their huge armies of laborers, are not from start to finish agricultural labor and enterprise within the terms of the federal enactment.

Judgment is rendered in favor of the plaintiff and the assessments complained of are declared void.